**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Farier, | No. CV-07-1407-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| City of Mesa, a municipal corporation, | |
| Defendant. | |

Plaintiff Anthony Farier worked for Defendant City of Mesa from November 2001 until he medically retired in July 2007. Plaintiff held one of two Planner II positions in the Zoning Plans Review Department of the Planning Division. In October 2006, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he had been denied promotions because of his race. Plaintiff filed another charge with the EEOC on June 8, 2007, claiming that Defendant had denied his workers' compensation claim in retaliation for complaining about the alleged race discrimination.

Plaintiff filed a complaint against Defendant on July 23, 2007. Dkt. #1. Plaintiff alleges that he is the only African American employee in his department and that he was denied promotions while other employees in the department received promotions. *Id.* ¶¶ 6-10. Plaintiff further alleges that he was denied workers' compensation benefits in retaliation for complaining about the alleged discrimination. *Id.* ¶¶ 11-16. The complaint asserts race discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 and

42 U.S.C. § 1981. *Id.* ¶¶ 17-31. Plaintiff seeks compensatory and emotional distress damages. *Id.* at 6.

Defendant has filed a motion for summary judgment. Dkt. #103. The motion has been fully briefed. Dkt. ##113, 119. For reasons that follow, the Court will grant the motion.

# I. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

# II. Race Discrimination Under Title VII (Count One).

Under Title VII, an employer may not "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment" because of his race. 42 U.S.C. § 2000e-2(a)(1). At the summary judgment stage, the plaintiff carries the initial burden of establishing a prima facie case of failure to promote by showing (1) that he belongs to a protected class, (2) that he applied and was qualified for the position, (3) that he was rejected for the position, and (4) that the position was given to an employee not of the plaintiff's class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "If the plaintiff establishes a prima facie case, the burden of production – but not persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). "If the employer does so, the plaintiff must show that the articulated reason is pretextual[.]" *Chuang v. Univ. of Cal.*

1 *Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000).

2 **A.    Senior Planner, Zoning Plans Review Position.**

Plaintiff applied for a Senior Planner, Zoning Plans Review position ("Zoning position") in August 2003. Defendant declined to interview Plaintiff for that position on the ground that he was not among the most qualified applicants. Dkt. #114-3 at 51. Plaintiff asserts that a less qualified white employee ultimately was given the position. Dkt. ##113 at 5, 114 ¶ 9.

Defendant argues that any claim relating to the Zoning position is time-barred. Dkt. #119 at 6. The Court agrees.

A Title VII plaintiff must file an administrative charge of discrimination no later than 300 days "after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (administrative charge must be filed within the "300-day time period after the discrete discriminatory act occurred"). Defendant rejected Plaintiff for the Zoning position on September 24, 2003. Dkt. #114-3 at 51. Plaintiff therefore was required to file a charge of discrimination with the EEOC by July 21, 2004 – 300 days after September 24, 2003. *See* 42 U.S.C. § 2000e-5(e)(1); *Morgan*, 536 U.S. at 113. Plaintiff did not notify the EEOC that he had been rejected for the Zoning position until February 28, 2007, more than two and a half years after the July 21, 2004 deadline. The claim is therefore time-barred. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998) ("[A] claim of discrimination under [Title VII] will not be sustained if it is based on an event or events that occurred more than 300 days before the filing of a charge."); *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1115-16 (9th Cir. 2003) ("Hernandez filed administrative charges with the [state agency] and the EEOC on August, 18, 2000; incidents occurring prior to October 23, 1999 therefore are time-barred under Title VII."); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 845 (9th Cir. 2004) ("Fonseca's Title VII claim regarding funeral leave is time-barred because he did not file a complaint with the EEOC within 300 days[.]"). The Court will grant summary judgment on this claim.

**B.     Promotion Decisions Made before May 2006.**

Plaintiff asserts that in May 2006 he complained to a supervisor "after being continuously passed over for promotions, while other employees (all non-African Americans) were being promoted." Dkt. ##113 at 6; *see* Dkt. #1 ¶ 7. Defendant correctly argues that Plaintiff has failed to establish a prima facie case of discrimination with respect to alleged promotion decisions made before May 2006. Dkt. #103 at 8. The degree of proof necessary to establish a prima facie case of discrimination is minimal, *see Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), "[b]ut "failure to allege 'specific facts' sufficient to establish the existence of a prima facie case renders a grant of summary judgment appropriate." *Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P 56(e)). Plaintiff does not identify the positions that were open before May 2006, nor has he presented evidence showing that he applied for those positions and was qualified for them. The Court will grant summary judgment on this issue.[1]

**C.     Senior Planner, Board of Adjustment Position.**

In July 2006, Plaintiff expressed interest in applying for a Senior Planner, Transportation position. His supervisor urged him instead to apply for a position within his own department, Senior Planner, Board of Adjustment ("BOA position"). Plaintiff agreed to be interviewed for the BOA position. Dkt. ##1 ¶ 8, 114 ¶ 16, 114-9 at 57. Plaintiff and one other candidate, Jeff McVay, interviewed for the position on August 18, 2006. Dkt. #1 ¶ 9. The interview board consisted of Zoning Administrator Gordon Sheffield, the Principal Planner (Laura Hyneman), two Senior Planners (Angelica Guevara and Kim Steadman), and a non-rating monitor from the Engineering Department (Pam Chavez). Dkt. #104-3 at 4. Shortly after the interviews, Sheffield selected McVay. Dkt. ##104-4 at 4, ¶ 23.

Plaintiff alleges that he was denied the BOA position because of his race. Dkt. #1 ¶¶ 8-10, 17-21. Defendant does not dispute that Plaintiff has established a prima facie case of

---

[1] Plaintiff notes that a white male was promoted to Plaintiff's job classification with only a high school education and none of Plaintiff's experience (Dkt. #113 at 6), but fails to explain how this constitutes actionable discrimination under Title VII.

- 4 -

discrimination: he is an African American, he applied and was qualified for the BOA position, and the position was given to McVay, a Caucasian. Defendant states that Plaintiff was not selected for the BOA position because he did not pass the interview. Dkt. #103 at 9. Defendant has sufficiently articulated a legitimate, non-discriminatory reason for denying Plaintiff the BOA position. *See Stones v. L.A. Cmty. Coll. Dist.*, 796 F.2d 270, 274 (9th Cir. 1986) (subjective evaluation by supervisor was a legitimate reason to deny promotion).

To survive summary judgment, Plaintiff must demonstrate pretext "'either directly by persuading the [C]ourt that a discriminatory reason more likely motivated [Defendant] or indirectly by showing that [Defendant's] proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at 1124 (quoting *Burdine*, 450 U.S. at 256). Plaintiff makes several arguments as to why Defendant's stated reason is pretextual. None has merit.

First, Plaintiff contends that he did not need to pass the interview to be selected for the BOA position. Dkt. ##113 at 12, 114 ¶ 23. Plaintiff notes that while the interview results sheet indicates that a score of 49 out of 70 is a passing score, the sheet also states that "[i]f a majority of the raters passes an applicant, even though the average or percentage score would have failed, the applicant passes." Dkt. #104-3 at 4. This statement does not support Plaintiff's contention that he could have been selected for the BOA position without passing the interview. Rather, the statement merely shows that Plaintiff could have passed the interview in one of two ways: either by receiving an average score of 49, or by receiving a score of 49 or higher from a majority of the interviews. Plaintiff received neither. His average score was 42.75 and his highest score from any interviewer was 43. *See id.*

Plaintiff also relies on Defendant's written charter and personnel rules to show that he did not need to pass the interview to be selected for the BOA position. Dkt. #113 at 12. The cited section of the charter provides that "[a]ll appointments and promotions of City officers and employees shall be made solely on the basis of merit and fitness demonstrated by examination or other evidence of competence." Dkt. #114-5 at 7 (§ 403(A)). The cited sections of the personnel rules provide that "personnel actions are based on merit, fitness, or other factors determined to be non-discriminatory" and interviews and other tests may be part

of the examination process. Dkt. #114-5 at 16-17. Plaintiff fails to explain how these neutral provisions show that the interview process for the BOA position was a mere pretext for race discrimination.

Second, Plaintiff asserts that while the interview board members discussed each candidate's answers and compared scores purportedly to ensure reliability and consistency, they actually "conspired to pass the successful applicant." Dkt. #113 at 13. The evidence Plaintiff cites in support of this assertion, even when construed liberally in his favor, does not suggest a conspiracy among the interviewers to pass McVay and fail Plaintiff because of race. *See* Dkt. ##104-4 at 1-4, 114 ¶¶ 18-25. Plaintiff cannot survive summary judgment "merely by denying the credibility of [D]efendant's proffered reason for the challenged employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006).

Third, Plaintiff contends that most applicants for the BOA position held graduate degrees in urban planning and therefore were well-qualified for the position, but only Plaintiff and McVay were selected for interviews. Dkt. ##113 at 11, 114 ¶¶ 17-18, 21. Plaintiff does not explain how the decision to interview Plaintiff over other qualified applicants reflects racial animus toward Plaintiff or discriminatory intent on the part of Defendant. Plaintiff also notes that the person who made the interview selections, Gordon Sheffield, held a degree in geography as did McVay, and Sheffield provided McVay with planning experience through a "special assignment" to a Senior Planner, BOA position. Dkt. #114 ¶ 21. This evidence may support the inference that Sheffield groomed McVay for a BOA position and selected him over other qualified applicants because of their common geography background, but it does not show that Sheffield discriminated against Plaintiff because of his race.

Fourth, Plaintiff claims that several members of the interview board did not have board of adjustment experience, and that hand-written notes on the interview rating forms demonstrate the subjective nature of the interview process. Dkt. #114 ¶¶ 19, 22. But "subjective evaluations are not unlawful per se and 'their relevance to proof of a

1 discriminatory intent is weak.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) (citation omitted). This is particularly true in this case given that Plaintiff and McVay were asked the same set of questions during their respective interviews and the questions pertained to specific demands of the BOA position. *See* Dkt. #104 ¶ 5. Moreover, even if the evidence were to show that Defendant made an unwise business judgment or used a faulty evaluation system in selecting McVay over Plaintiff, this "does not support the inference that [Defendant] discriminated on the basis of [race]." *Coleman*, 232 F.3d at 1285; *see Green v. Maricopa County Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 1110, 1126 (D. Ariz. 2003) (a Title VII plaintiff "must show more than the presence of subjective evaluations to prevail on a discrimination claim") (citing *Stones*, 796 F.2d at 274).

Fifth, Plaintiff believes that he was the more qualified candidate because he had received good performance evaluations and had more experience and education than McVay. Dkt. ##1 ¶ 10, 113 at 12-13, 114 ¶¶ 3-7, 24. Plaintiff's education and work experience were considered by Defendant and resulted in him being one of only two applicants interviewed for the BOA position. *See* Dkt. #104-4 at 2, ¶¶ 7-8; *see also* Dkt. #114-3 at 45. Defendant states that Plaintiff was rejected not because he was less qualified than McVay on paper, but because he failed the interview. *Id.* at 3, ¶¶ 17-19. Plaintiff's "subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact" as to whether Defendant's reason for not promoting Plaintiff was pretextual. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996); *see Cornwell*, 439 F.3d at 1028 n.6; *Coleman*, 232 F.3d at 1285; *Green*, 265 F. Supp. 2d at 1133.

Finally, Plaintiff relies on a disparaging e-mail from one of his supervisors and isolated incidents of racial harassment by coworkers to establish pretext. Plaintiff cites a February 2006 e-mail from Hyneman referring to him as being ignorant and naive, but does not explain how this demonstrates racial animus on the part of the author or Defendant. *See* Dkt. ##113 at 6, 114-3 at 75. Plaintiff states that on two occasions in June 2006 coworkers placed racist jokes on his desk. Dkt. ##113 at 7, 114-4 at 25, 37. Plaintiff notes that Sheffield supervised one of the employees, but presents no argument or evidence showing

1 that Sheffield was aware of the incidents or that they had any impact on his decision to deny
2 Plaintiff the BOA position.
3       Defendant has consistently stated that Plaintiff was not selected for the BOA position
4 because he failed his interview. Dkt. ##103 at 8-9, 104-4 at 4, ¶ 20; *see* Dkt. #114-9 at 57.
5 Plaintiff has presented no direct evidence of discriminatory motive on the part of Defendant,
6 nor has he presented substantial circumstantial evidence tending to show that Defendant's
7 stated reason was actually a pretext for discrimination. The Court will grant summary
8 judgment with respect to the denial of a promotion to the BOA position.

9       **D.**    **Alleged Pattern or Practice Discrimination.**

10       Plaintiff believes Defendant has engaged in a "pattern or practice" of race
11 discrimination. Dkt. #113 at 8. This belief is based on Defendant's decision to provide
12 McVay with board of adjustment experience through "special assignment" and the decision
13 to select McVay over Plaintiff for the BOA position. *Id.* at 8-9.
14       To establish a prima facie case of pattern or practice discrimination, Plaintiff must
15 show more than "isolated or sporadic" discriminatory acts by Defendant. *Cooper v. Fed.*
16 *Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). Plaintiff must present evidence that
17 racial discrimination was Defendant's "'standard operating procedure – the regular rather
18 than the unusual practice.'" *Id.* (quoting *Teamsters v. United States*, 431 U.S. 324, 336
19 (1977)). Plaintiff has not met his burden.

20       **E.**    **Statistical Evidence.**

21       Defendant has presented evidence that it has an affirmative action program and
22 statistics to show that African Americans are not underrepresented in its overall workforce.
23 Dkt. ##104-9, 104-10. Plaintiff notes that while a significant number of promotions were
24 given to minorities in the Planning Division between November 2001 and October 2006,
25 none went to African Americans. Dkt. #113 at 14. But Plaintiff does not address the number
26 of African Americans who actually applied for promotions, the relative qualifications of the
27 applicant pool, or the reasons why one applicant was selected over another. Plaintiff has not
28 presented sufficient statistical evidence to survive summary judgment. *See Coleman*, 232

1 F.3d at 1283 (statistical evidence must account for possible nondiscriminatory variables in
2 order to raise an inference of discrimination); *Penk v. Or. State Bd. of Higher Educ.*, 816
3 F.2d 458, 465 & n.1 (9th Cir. 1987) (courts must use caution when "asked to draw inferences
4 as to the existence of hidden discriminatory motives from statistical evidence").

### F. Defendant's Recruitment Policies and Procedures.

Plaintiff asserts that Defendant violated its own policies and procedures by not conducting an open recruitment for the BOA position and instead selecting from a pool of employees who had applied for a different position in the Transportation Division. Dkt. #113 at 9-10; *see* Dkt. #114-3 at 45. A violation of policies and procedures does not, however, show race discrimination. More importantly, the alleged irregular recruitment is irrelevant to Plaintiff's claim because he was one of the two individuals interviewed for the position.

### G. Title VII Race Discrimination Summary.

Plaintiff has failed to create a triable issue on whether Defendant denied him promotions or otherwise discriminated against him because of race. The Court will grant Defendant's motion for summary judgment with respect to the Title VII race discrimination claim (count one).

## III. Race Discrimination Under 42 U.S.C. § 1981 (Count Two).

Section 1981 is similar to Title VII in that it prohibits race discrimination in the "benefits, privileges, terms, and conditions" of employment. 42 U.S.C. § 1981(b). Plaintiff's discrimination claim under § 1981 fails because it is analyzed under the *McDonnell Douglas* burden shifting framework for Title VII, *see Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008), and, for reasons explained above, summary judgment is appropriate on Plaintiff's Title VII discrimination claim. *See also Fonseca*, 374 F.3d at 850 ("Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case."); *Manatt v. Bank of Am.*, 339 F.3d 792, 797 (9th Cir. 2003) (Title VII principles apply with equal force in a § 1981 action).

Moreover, to establish a claim against Defendant under § 1981, Plaintiff must show that a "policy or custom" of Defendant was the moving force behind the alleged unlawful

- 9 -

discrimination. *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996) (amendment to § 1981 preserves the "policy or custom" requirement announced in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for [the] plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.") (emphasis in original). Plaintiff has identified no discriminatory policy or custom, nor has he presented evidence that any policy or custom of Defendant caused Sheffield to deny Plaintiff the BOA position. The Court will grant summary judgment on the § 1981 race discrimination claim (count two).

**IV.     Retaliation Under Title VII and § 1981 (Counts Three and Four).**

Plaintiff had hip replacement surgery in October 2005 and thereafter was placed on restricted work status. Dkt. #114-12 at 22. On August 28, 2006, Plaintiff filed an industrial accident report claiming he had suffered an on-the-job injury to his left hip when he pulled a chair out from a conference room table. Dkt. #105-3 at 10. Defendant's workers' compensation representative, Joanne Stein, denied Plaintiff's claim on October 4, 2006 on the ground that Plaintiff had not provided her with medical records. *Id.* at 3, 19, 28-30.

Plaintiff filed a new accident report on November 2, 2006, claiming additional injuries to his right knee and back caused by the August 28, 2006 incident. Dkt. #105-4 at 2; *see* Dkt. #114 ¶ 27. Plaintiff was examined by several doctors. *See* Dkt. ##105-4 at 3-13, 114-12 at 12. Orthopedic surgeon Sherwood Duhon performed an independent medical examination of Plaintiff on November 27, 2006. Dkt. #105-6 at 6-9. Dr. Duhon diagnosed Plaintiff with left hip bursitis and opined that this condition was related to the August 28, 2006 incident, but other medical conditions were not. *Id.* at 8. Stein continued to deny Plaintiff's claim.

A hearing before the Industrial Commission of Arizona was held on August 9, 2007. The administrative law judge issued a decision on September 28, 2007, finding that Plaintiff "sustained a compensable injury to his left hip on August 28, 2006, and did not sustain an

injury to nor aggravate pre-existing conditions to any other parts of his body on that date." Dkt. #114-12 at 23. The judge awarded Plaintiff medical and compensatory benefits from August 28, 2006 until he was determined to be medically stationary. *Id.* Defendant paid Plaintiff's claim upon receipt of the administrative decision. Dkt. #104 ¶ 35.

Plaintiff alleges that Defendant's continuing denial of his workers' compensation claim was in retaliation for him having filed a charge of discrimination with the EEOC. Dkt. ##1 ¶¶ 28, 31; *see* Dkt. #114 ¶ 29. Both Title VII and § 1981 prohibit an employer from retaliating against an employee because he has opposed perceived race discrimination. *See* 42 U.S.C. § 2000e-3(a); *Surrell*, 518 F.3d at 1107; *CBOCS W., Inc. v. Humphries*, 128 S. Ct. 1951, 1961 (2008). A plaintiff makes a prima facie case of retaliation by producing evidence that he engaged in protected activity, that the employer subjected him to an adverse action, and that there was a causal link between the two. *See Surrell*, 518 F.3d at 1108.

Because Defendant does not dispute that Plaintiff has made a prima facie case of retaliation (Dkt. #103 at 14), Defendant has the burden of presenting a legitimate, non-retaliatory reason for its challenged action. *See id.* Defendant states that Dr. Duhon's opinions did not convince Stein that Plaintiff's left hip injury was compensable because, based on her experience investigating and responding to workers' compensation claims, Stein strongly believed it improbable that the alleged incident – pulling a chair out from a table – could have caused any of the injuries Plaintiff was claiming. Stein's doubt was reinforced by Plaintiff's reluctance to provide her with medical records. Dkt. ##103 at 15, 105-3 at 5-6, ¶ 22. Defendant has sufficiently articulated a legitimate, non-retaliatory reason for its denial of Plaintiff's claim.

To survive summary judgment, Plaintiff must demonstrate a triable issue as to whether Defendant's "explanation was merely a pretext for impermissible retaliation." *Manatt*, 339 F.3d at 801; *see Surrell*, 518 F.3d at 1108. Plaintiff asserts in his response that Stein denied his claim on October 4, 2006 despite having sufficient medical information to approve the claim. Dkt. #113 at 14. The denial of the claim on that date could not have been retaliatory, however, because Plaintiff did not file his charge of discrimination until October 24, 2006,

three weeks after his claim was denied (*see* Dkt. #114-9 at 56-57) and Plaintiff has presented no evidence showing that Stein knew of any other protected activity by Plaintiff.

Plaintiff presents no other pretext argument or evidence in his response. In his statement of facts, Plaintiff notes that Defendant continued to deny his claim even after Dr. Duhon opined that his left hip injury was related to the August 28, 2006 incident. Dkt. #114 ¶¶ 29, 32, 42. Dr. Duhon believed that "it would be unusual for any substantial or specific injury to occur under the circumstances [Plaintiff] described." Dkt. #114-11 at 31, ¶ 9. Relying on Plaintiff's subjective complaints, Dr. Duhon gave Plaintiff "the benefit of the doubt in finding the alleged hip injury industrially related to the August 28, 2006 incident" because he served as "a patient advocate[.]" *Id.*; Dkt. #105-6 at 16. The fact that Defendant did not give Plaintiff the same benefit of the doubt, standing alone, does not show that Defendant was motivated by retaliation when it continued to deny Plaintiff's claim. Dr. Duhon himself has testified that the decision to allow the claim to proceed through the administrative process was reasonable "given the dubious mechanism of the injury." Dkt. #114-11 at 32, ¶ 12.[2]

Plaintiff has not presented direct evidence or substantial circumstantial evidence of pretext. Summary judgment for Defendant must therefore be granted on the retaliation claims (counts three and four). *See Manatt*, 339 F.3d at 801.

**V.   Conclusion.**

Plaintiff has not demonstrated a triable issue as to whether he was denied promotions because of his race or was retaliated against because he complained about perceived discrimination. The Court will therefore grant Defendant's motion for summary judgment. Given this ruling, the Court need not address Defendant's arguments regarding damages. *See* Dkt. ##103 at 16-17, 119 at 11.

---

[2]Plaintiff asserts that counsel for Defendant argued at an administrative hearing that Plaintiff made his workers' compensation claim because he was disgruntled about not being promoted (Dkt. ##1 ¶ 15, 114 ¶ 34), but does not explain how this statement shows a retaliatory motive on the part of Defendant.

**IT IS ORDERED:**

1. Defendant City of Mesa's motion for summary judgment (Dkt. #103) is **granted**.

2. The Clerk is directed to **terminate** this action.

DATED this 19th day of May, 2009.

*David G. Campbell*
United States District Judge